# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| TRACY COMEAUX-BISOR, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-06-2836 | |
| § | | |
| THE YMCA OF GREATER § | | |
| HOUSTON, § | | |
| Defendant. § | | |

## MEMORANDUM AND ORDER

Plaintiff Tracy Comeaux-Bisor, proceeding *pro se*, brought this case for unlawful termination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. ("FMLA"). Defendant YMCA of Greater Houston has filed a Motion for Summary Judgment [Doc. # 10], to which Plaintiff has responded [Doc. #12], and Defendant replied [Doc. # 13]. Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court concludes that Defendant's Motion for Summary Judgment should be **granted**.

## I.    FACTUAL BACKGROUND

The dispute in this case centers around Defendant's termination of Plaintiff on June 8, 2005, after Plaintiff had been repeatedly absent from work because of illness related to pregnancy.

Plaintiff was first hired by the Post Oak YMCA in Houston in 2001 and promoted to Membership Coordinator in 2004.[1]  In February 2005 Plaintiff, who was then pregnant, was frequently absent from work.  Plaintiff does not dispute the absences, but claims that she was medically unable to work.  On March 23, 2005, Plaintiff requested twelve weeks of leave under the FMLA, from March 7, 2005 through May 30, 2005.[2]  Her request states that her baby was due on October 26, 2005, and that she required intermittent leave because of "various [doctors'] appointments" and because "I have already been hospitalized on 2 occasions."[3]

Plaintiff's request for FMLA leave was processed by Yolanda Wright, Human Resources Generalist for Defendant, who provided Plaintiff with a Certification of Health Care Provider to be completed by Plaintiff's doctor.  Defendant required this form to verify that the requested leave was medically necessary.  Defendant claims that Ms. Wright made several attempts to obtain the form from Plaintiff, and explained to Plaintiff that her FMLA leave could not be approved without the medical certification.[4]  On April 29, 2005, Ms. Wright sent Plaintiff a letter memorializing their conversations,

---

[1]  Affidavit of Yolanda Wright, Exhibit A to Motion for Summary Judgment ("Wright Affidavit"), ¶ 3.

[2]  FMLA Request & Agreement, Exhibit B to Motion for Summary Judgment.

[3]  *Id*.

[4]  Wright Affidavit, ¶ 6.

providing Plaintiff with another form, and stating that her FMLA leave would be denied unless they received the form by May 14, 2005.[5]

When Plaintiff submitted the required certification, dated May 13, 2005, and completed by M. Turrentine, M.D., the certification stated that she was able to work.[6] Dr. Turrentine stated that Plaintiff would be incapacitated "with delivery and 6 weeks post-partum," and that required treatment for her condition was "routine prenatal care."[7] Plaintiff's deposition confirms her understanding of Dr. Turrentine's opinion.[8]

Plaintiff in her Response claims that she advised Defendant that she was treated by Dr. James Burkhead at Kelsey-Seybold Women's Center, in addition to Dr. Turrentine, and that Dr. Burkhead "treated me for the duration of my pregnancy including delivering my baby four weeks early due to my progressively worsened

---

[5]   Letter dated April 29, 2005, Exhibit 1 to Wright Affidavit.

[6]   *See* Certification of Health Care Provider, Exhibit C to Motion for Summary Judgment, at 1 (Dr. Turrentine indicated that Plaintiff was not "presently incapacitated"; form defines "incapacity," for FMLA purposes, as "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom").

[7]   *Id*. at 1-2.

[8]   *See* Plaintiff's Deposition, Exhibit F to Motion for Summary Judgment, at 33-34 (Dr. Turrentine told Plaintiff she had "a serious case of morning sickness" and "wanted [Plaintiff] to continue [her] daily activities as much as possible"); *id*. at 35-36 (Dr. Turrentine never told her that she was medically unable to work).

medical condition."[9] However, Plaintiff has not produced a medical certification from Dr. Burkhead (or any other doctor) stating that she was medically unable to work, as was required to support her FMLA leave request.

Based on the certification from Dr. Turrentine, Defendant was prepared to grant Plaintiff leave when her baby was delivered, but expected her to work until that time.[10] Defendant states that Plaintiff "continued to fail to return to work and continued to verbally report that she required medical leave."[11] On May 26, 2005, Ms. Wright spoke to Dr. Turrentine, who told her that Plaintiff was capable of working.[12]

---

[9] Response, at 2d unnumbered page. *See also* Plaintiff's Deposition, Exhibit F to Motion for Summary Judgment, at 34-35 (Dr. Burkhead admitted her into the hospital for dehydration and hyperemesis, and soon thereafter Plaintiff switched from Dr. Turrentine's care to Dr. Burkhead's); *id*. at 98 ("I really feel and my doctor felt that there was no possible way—Dr. Burkhead—that I would have been able to work without threatening the life of myself and my child").

[10] Wright Affidavit, ¶ 7.

[11] *Id*.

[12] *Id*. ¶¶ 8-9. Plaintiff's Response claims that she did not authorize Dr. Turrentine to speak with Defendant, disputing a statement in the affidavit submitted by Yolanda Wright, Defendant's Human Resources Generalist. *See* Wright Affidavit, ¶ 8 ("The Plaintiff authorized me to speak to Dr. Tu[rr]entine"). On summary judgment, the Court is required to resolve all factual disputes in Plaintiff's favor, and thus assumes that the conversation was unauthorized. However, the dispute over authorization is irrelevant to the Court's ruling. The Court need not—and does not—rely upon Ms. Wright's conversation with Dr. Turrentine, because Dr. Turrentine's written medical certification establishes the same point: Dr. Turrentine's opinion was that Plaintiff was medically capable of working.

Defendant advised Plaintiff, apparently orally, that her request for FMLA leave was denied.[13]

Plaintiff's FMLA leave was denied in late May—about the same time that her FMLA leave, if it had been granted, would have expired.  However, Plaintiff still did not report for work and, according to Ms. Wright, "refused to provide a date by which she believed she would return to work."[14]  Plaintiff's deposition testimony corroborates Ms. Wright's statements:

> Q. . . . And then how about after the leave would have ended assuming for a second that you had complied with the requirements?  After the leave ended on May 30, 2005, you still had no intention to return to work because of your medical condition, right?
>
> A. I would have liked to, but my medical condition did not allow me to.
>
> Q. And you made it clear to the people at the Y that you spoke to, including Ms. Wright, that whether you were or were not on leave between March 7, 2005 and May 30, 2005, after May 30, 2005 you were not prepared to return to work?
>
> A. Right.  I was so sick that I would have to apply for the long-term disability.[15]

---

[13]   *Id.* ¶ 10.

[14]   *Id.* ¶ 11.

[15]   Plaintiff's Deposition, Exhibit F to Motion for Summary Judgment, at 73-74. *See id.* at 98-99 (Ms. Wright was correct that Plaintiff "was medically incapable, according to [Plaintiff], to (continued...)

On June 8, 2005, Plaintiff's employment was terminated.[16] The termination letter states that Plaintiff was ineligible for FMLA leave because she had not provided a medical certification supporting her request, that her leave from March 7 through May 30 was being processed as a personal leave of absence, and that her leave options were exhausted, and adds: "Since you have indicated that you will not be able to return to work at this time . . . we will view this as a voluntary termination due to health and/or medical reasons."[17]

As for her allegations of racial discrimination, Plaintiff states she was the only female African-American supervisor at the Post Oak YMCA and was "treated unfairly and verbally abused by the branch executive Kevin Fiorillo."[18] Plaintiff's deposition testimony indicates that Mr. Fiorillo allegedly stated that Plaintiff's appearance was unsatisfactory and that her face should not be the first face people see when they walk through the door of the YMCA.[19] However, Plaintiff acknowledged that she could not

---

[15]   (...continued)
       return to work and had no further leave time available").

[16]   Letter dated June 8, 2005, Exhibit 2 to Wright Affidavit.

[17]   *Id.*

[18]   Complaint [Doc. # 1], at 3.

[19]   Plaintiff's Deposition, Exhibit F to Motion for Summary Judgment, at 17-18.

be sure whether Mr. Fiorillo made these statements because of her race or her weight.[20] At some point prior to her termination, Mr. Fiorillo allegedly told Plaintiff that he "didn't feel like [the YMCA] was the place [Plaintiff] needed to be" and that "he didn't feel like [Plaintiff] wanted [her] job."[21] She further states that, although he told her there was no problem with her job performance, Mr. Fiorillo told Plaintiff, "'[I]f you decide to resign, then I think that would be best for all of us.'"[22]

Plaintiff does not allege that Ms. Wright, who signed her termination letter, discriminated against her because of her race, color, or gender.[23] Plaintiff testified that she has no evidence that Mr. Fiorillo was involved in the decision, reflected in her termination letter, to terminate her because she had exhausted her leave options and was not prepared to return to work.[24] She has no evidence that anyone else at the YMCA, other than Mr. Fiorillo, took her race, color, or gender into consideration when terminating her employment.[25]

---

[20]   *Id*.

[21]   *Id*. at 56.

[22]   *Id.*

[23]   *Id.* at 55-56.

[24]   *Id*. at 57-58.

[25]   *Id*. at 58.

## II.     SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The moving party, however, need not negate the elements of the non-movant's case.  *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party

may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise,

"unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted)

## III. ANALYSIS

Plaintiff has not identified a genuine issue of material fact, sufficient to defeat summary judgment, for either her FMLA claims or her Title VII claims. Each claim will be addressed in turn.[26]

---

[26] Plaintiff's pleadings complain about two additional matters, but neither is relevant to her claims under the FMLA and Title VII. First, Plaintiff complains that her application for
(continued...)

A.     **FMLA Claims of Interference and Retaliation**

Under the FMLA provision relied upon by Plaintiff, "an eligible employee of a covered employer has the right to take unpaid leave for a period of up to 12 workweeks in any 12-month period when the employee has 'a serious health condition that makes [him or her] unable to perform the functions of [his or her] position.'" *Bocalbos v. Nat'l Western Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998), *cert. denied*, 528 U.S. 872 (1999) (quoting 29 U.S.C. § 2612(a)(1)(D)).  The FMLA also protects employees from interference with leave under the Act, and from retaliation for exercising his or her rights under the Act.  *Id*.

Plaintiff claims that Defendant both interfered with her rights to FMLA leave and retaliated against her for exercising those rights.  Both claims are defeated by Plaintiff's

---

26      (...continued)
        unemployment benefits was initially denied by Defendant.  *See* Complaint, at 3.  This complaint has no bearing on the claims before this Court.  Moreover, it appears that any harm to Plaintiff was remedied, because the Complaint goes on to state that, "Under further investigation by the Unemployment Commission benefits were granted for involuntary termination." *Id*.

        Plaintiff also alleges that Defendant did not grant her an opportunity to apply for "long term disability." Complaint, at 3 ("Although Ms. Comeaux-Bisor was pregnant she was still denied FMLA leave as well as being considered for Long Term Disability because the YMCA of Greater Houston felt she could continue to work during her illness while she was pregnant"); *see* Response, at 3d unnumbered page.  At her deposition, Plaintiff agreed with defense counsel's statement that her eligibility for disability "was something that the disability insurer would have to decide." Plaintiff's Deposition, at 98.  Plaintiff's allegation, even if taken as true, is irrelevant to her FMLA and Title VII claims.

failure to provide medical certification documenting a "serious health condition" that would entitle her to FMLA leave.

### 1.     Interference with FMLA Leave

To demonstrate that Defendant interfered with her rights under the FMLA, 29 U.S.C. § 2615(a)(1), Plaintiff must show that (1) she is an eligible employee under the FMLA, (2) Defendant is an employer subject to FMLA requirements, (3) she was entitled to FMLA leave, (4) she gave notice to Defendant of her intention to take FMLA leave, and (5) Defendant denied the FMLA leave to which she was entitled. *See, e.g., Ford-Evans v. Smith*, No. 04-3344, 2007 WL 1795717, at *4 (S.D. Tex. June 19, 2007); *Schimek v. MCI, Inc.*, No. 05-0045, 2006 WL 2252034, at *11 (N.D. Tex. Aug. 7, 2006); *Hurt v. Ecolab, Inc.*, No. 05-1508, 2006 WL 1409520, at *5 (N.D. Tex. May 23, 2006); *Belgrave v. City of New York*, No. 95-1507, 1999 WL 692034, at *43 (E.D.N.Y. Aug. 31, 1999) (tying the five elements to 29 U.S.C. §§ 2611(2), 2611(4), 2612(a)(1), 2612(e)(1), and 29 C.F.R. §§ 825.302-.303).

Plaintiff's *prima facie* case fails, on both the third and fifth prongs, because she was not entitled to FMLA leave. Despite Plaintiff's allegation that she provided "all necessary documentation" and that her request for FMLA leave "was never processed after being submitted" to Defendant, Plaintiff has not presented any competent summary judgment evidence that she was entitled to FMLA leave. To the contrary, the

certification she submitted stated that she was medically capable of working during the time period in question.[27]

Based on Plaintiff's failure to provide a supporting medical certification, Defendant properly denied her request for FMLA leave:

> The FMLA provides that an employer may require that a request for FMLA leave be supported by a certification issued by a treating physician or health care provider. 29 U.S.C. § 2613(a); *Hurt v. Ecolab*, [2006 WL 1409520, at *4]. In such cases, the failure to provide an appropriate medical certification is fatal to a claim under the FMLA. 29 C.F.R. § 825.311; *Hurt*, 20056 WL 1409520, at *4.

*Schimek*, 2006 WL 2252034, at *11. Defendant is entitled to summary judgment on Plaintiff's interference claim.

### 2. Retaliation Against Plaintiff for Exercising Her Rights Under the FMLA

To establish a *prima facie* case for retaliation under the FMLA, 29 U.S.C. § 2615(a)(2), Plaintiff must demonstrate that (1) she is protected under the FMLA; (2)

---

[27] Certification, Exhibit C to Motion for Summary Judgment, at 1. Plaintiff claims that she had the right "to a second and even third opinion as well as the YMCA had [the] right to bring in their own physician to examine me and they did not allow me that opportunity." Response, at 3d unnumbered page. Plaintiff bore the responsibility to obtain such opinions and submit them to Defendant, and there is no evidence that she did so. Plaintiff's filings and deposition testimony refer to another physician, Dr. Burkhead, who treated her for medical problems related to her pregnancy, and her Response indicates that she had a difficult pregnancy and early delivery. However, the Court is required to focus on a more narrow question: whether Plaintiff documented her entitlement to FMLA leave in May, 2005. Plaintiff has not provided a certification from Dr. Burkhead supporting her need for medical leave and, more to the point, has provided no evidence that she presented such a certification to Defendant when applying for FMLA leave.

she suffered an adverse employment decision; and either (3)(a) she was treated less favorably than an employee who had not requested FMLA leave, or (3)(b) the adverse employment decision was made because of her request for FMLA leave. *Bocalbos*, 162 F.3d at 383. If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for terminating Plaintiff. *Id*. After Defendant articulates the reason, the burden shifts back to Plaintiff to establish, by a preponderance of the evidence, that the articulated reason is a pretext for retaliation. *Id*.

Plaintiff's *prima facie* case fails on the first prong. As discussed above, Plaintiff has not provided evidence that she was protected by the FMLA, because she did not provide medical certification documenting a serious health condition that rendered her unable to perform her job duties. *See Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 975 (5th Cir.), *cert. denied*, 525 U.S. 826 (1998) (leave request qualifies for FMLA protection if medical documentation establishes a serious health condition).

Moreover, assuming Plaintiff could establish her *prima facie* case, she has not rebutted Defendant's articulated, non-retaliatory reason for the termination, which is Plaintiff's refusal to report to work after already receiving twelve weeks of leave from

March 7, 2005, through May 30, 2005.[28] Even if Plaintiff had qualified for FMLA leave, she had exhausted the 12-week maximum leave entitlement, and Defendant was justified in terminating her for her continued absence. *See Oatman v .Fuji Photo Film USA, Inc.*, 54 F. App'x. 413, at *2 (5th Cir. 2002), *cert. denied*, 538 U.S. 978 (2003) (if, upon returning from FMLA leave, the employee is unable to perform her job functions because of continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA) (citing 29 C.F.R. § 825.114(b)); *Dogan-Carr v. Saks Fifth Ave. Texas, LP*, No. 05-1236, 2007 WL 646375, at *25 (S.D. Tex. Feb. 26, 2007) ("The FMLA allows an employer to deny an employee reinstatement if that employee's leave of absence exceeds the statutory 12-week entitlement") (citing 29 U.S.C. § 2612(a)(1) and cases).

Plaintiff has not rebutted this legitimate, non-retaliatory reason for her termination with any evidence that Defendant's reason is a pretext for retaliation. Summary judgment therefore is appropriate on her retaliation claim.

### B.     Title VII Claims of Race and Gender Discrimination

Plaintiff's complaint alleges that Defendant discriminated against her, in violation of Title VII, based on her race and gender.  Her Title VII claims cannot survive summary judgment because, even assuming Plaintiff could establish a *prima facie* case

---

[28]     *See* Plaintiff's Deposition, Exhibit F to Motion for Summary Judgment, at 73-74 (Plaintiff was not prepared to return to work after May 30, 2005).

of discrimination, she has not presented evidence that Defendant's proffered non-discriminatory reason is a pretext for illegal discrimination.[29]

A *prima facie* case of racial discrimination requires a showing that (1) Plaintiff was a member of a protected group, (2) she was qualified for the position she held, (3) she suffered an adverse employment action, and (4) she was replaced by an individual outside the protected class. *DeCorte v. Jordan*, 497 F.3d 433, 437(5th Cir. 2007). The undisputed evidence that Plaintiff was not prepared to return to work, even after May 30, 2005, compels the conclusion that she was not qualified for her position. *See Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998); *Amato v. St. Luke's Episcopal Hosp.*, 987 F. Supp. 523, 530 (S.D. Tex. 1997) ("numerous courts have held that attendance at work, the most basic element of an employee's duties, is an essential element of almost all jobs") (citing cases).

---

[29]   Defendant argues that Plaintiff's EEOC charge dated April 10, 2006 was not timely because it was filed 306 days after Plaintiff's termination on June 8, 2005. *See* EEOC Charge, Exhibit E to Motion for Summary Judgment; Termination Letter, Exhibit D to Motion for Summary Judgment. Plaintiff states in her Response that she filed an earlier EEOC charge that was misplaced, *see* Response at 2d unnumbered page, but she has not produced any such charge.

Although a Plaintiff in Texas must file an EEOC charge within 300 days of the discriminatory act, the timeliness requirement "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Linton v. City of Marlin*, 253 F.3d 706, 2001 WL 498737, at *1 (5th Cir. 2001) (internal citation and quotation marks omitted). Because, as discussed above, Plaintiff's Title VII claim fails on the merits, the Court need not decide whether equitable tolling should apply.

Moreover, as discussed above in the FMLA context, Plaintiff's failure to report for work also constitutes Defendant's legitimate, non-discriminatory reason for terminating her. The burden therefore shifts to Plaintiff to establish that Defendant's reason is a pretext for racial discrimination. *DeCorte*, 497 F.3d at 437. On summary judgment, of course, Plaintiff need only demonstrate that there is a genuine factual dispute regarding pretext.

Viewing the evidence in the light most favorable to Plaintiff, the potential evidence of racial animus is as follows:

- Plaintiff was "treated unfairly and verbally abused by the branch executive Kevin Fiorillo";[30]

- Mr. Fiorillo stated that Plaintiff's appearance was unsatisfactory and that her face should not be the first face people see when they walk through the door of the YMCA; Plaintiff interpreted his statement to refer either to her race or to her weight;[31] and

- Mr. Fiorillo told Plaintiff that, although there was no problem with her job performance, he "didn't feel like [the YMCA] was the place [Plaintiff] needed to be," that "he didn't feel like [Plaintiff] wanted [her] job," and that "'[I]f you decide to resign, then I think that would be best for all of us.'"[32]

Plaintiff has no evidence of racial animus by anyone other than Mr. Fiorillo.[33]

---

[30]   Complaint, at 3.

[31]   Plaintiff's Deposition, Exhibit F to Motion for Summary Judgment, at 17-18.

[32]   *Id.* at 56.

[33]   *Id*. at 58.

Plaintiff's evidence, even if taken as true, cannot establish that Defendant's reason for terminating her was a pretext for discrimination.  In evaluating a claim for disparate treatment based on race discrimination, the Court is required to focus on whether the protected trait "actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000).  Plaintiff's admissions that she has no evidence that Mr. Fiorillo was involved in the decision to terminate her and no evidence that Ms. Wright, who signed her termination letter, discriminated against her because of her race, color, or gender,[34] defeat a showing of pretext. Plaintiff has not raised a genuine question of material fact that Defendant engaged in race discrimination against her.

Plaintiff also has failed to raise a fact question regarding gender discrimination. Although the Complaint and accompanying EEOC charge allege gender discrimination, Plaintiff makes no relevant allegations apart from Defendant's denial of medical leave during her pregnancy.  The Court considers Plaintiff's true claim to be her FMLA claims regarding pregnancy leave, which are discussed above.  To the extent Plaintiff brings a separate claim for gender discrimination under Title VII, however, the Court's reasons for granting summary judgment on her race discrimination claim apply equally to her gender discrimination claim.

---

[34]   *See id.* at 55-58.

## IV. CONCLUSION

For all the foregoing reasons, Defendant is entitled to summary judgment on each of Plaintiff's claims and this case will be dismissed with prejudice. It is therefore

**ORDERED** that the YMCA's Motion for Summary Judgment [Doc. # 10] is **GRANTED**.

A separate final judgment will be filed.

SIGNED at Houston, Texas, this **26th** day of **October, 2007**.

_____
Nancy F. Atlas
United States District Judge